NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                  :
ROBERT PROCHASKA,                 :
                                  :
           Plaintiff,             :            Civil Action No. 09-02574 (JAP)
                                  :
      v.                          :            **OPINION**
                                  :
COMMISSIONER OF SOCIAL            :
SECURITY,                         :
           Defendant,             :
                                  :
_____

PISANO, District Judge.

Before the Court is an appeal by Robert Prochaska ("Plaintiff") from the final decision of

the Commissioner of the Social Security Administration ("Commissioner") denying his request

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits.

The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and

decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.   The

record provides substantial evidence supporting the Commissioner's decision that Plaintiff was

not disabled.  Accordingly, the Court affirms.

## I.      BACKGROUND

Plaintiff was born on September 5, 1953.  He worked as a computer programmer analyst

until 1999.  Plaintiff asserts that he has been disabled since August 1, 1999.

### A.    Procedural History

Plaintiff filed an application for DIB on August 19, 2003, and a claim for SSI on May 7, 2004, alleging an inability to work effective August 1, 1999 due to mental impairments, a nervous system disorder, a digestive disorder and chronic fatigue.   The Social Security Administration (the "SSA") denied Plaintiff's claim for DIB initially and upon reconsideration. Plaintiff filed a timely request for hearing, which was held on July 5, 2005 in Newark, New Jersey.   Following that hearing, Administrative Law Judge Ralph Muehlig ("ALJ Muehlig") denied Plaintiff's claim.   Plaintiff then filed a request for review of ALJ Muehlig's decision.   On January 6, 2006, the SSA's Appeals Council granted Plaintiff's request for review, vacated ALJ Muehlig's decision and remanded the case for further proceedings.   A second hearing was held before ALJ Muehlig on April 25, 2006.   Following that hearing, ALJ Muehlig denied Plaintiff's claims.   Plaintiff subsequently filed a request for review of ALJ Muehlig's decision with the SSA.   On February 25, 2008, the SSA's Appeals Council granted Plaintiff's request for review, vacated ALJ Muehlig's decision and remanded the case for further proceedings.

A third hearing was held on June 2, 2008, this time before Administrative Law Judge Gerald Ryan ("ALJ Ryan").   ALJ Ryan issued a decision on July 23, 2008, denying Plaintiff's claims.   Plaintiff then filed a third request for review on September 21, 2008.   The SSA denied Plaintiff's third request for review on March 31, 2009.   Upon that denial, ALJ Ryan's ruling became the Commissioner's final decision.   Plaintiff filed this action challenging the final decision on May 27, 2009.

**B.     Factual History**

**1.     Plaintiff's Employment Prior to August 1999**

Plaintiff testified that he worked as a computer programmer analyst at AT&T and

Computer Sciences Corporation until August 1999.

**2.     Plaintiff's Medical History**

The record indicates that Plaintiff has a history of treatment prior to his alleged disability

onset date of August 1, 1999.  Dr. Serge Kaftal, M.D., treated Plaintiff between August 22, 1995,

and July 31, 1997.  (Administrative Record ("R.") at 132 - 134).  Dr. Kaftal's records show that

Plaintiff's medical history includes hypertension, cigarette smoking, a few episodes of upper and

lower respiratory infection, fatigue and memory problems.  Dr. Kaftal stated that he was unable

to provide a medical opinion regarding Plaintiff's ability to do work related activities.

Dr. Richard Rosenberg, M.D., a neurologist, examined Plaintiff on August 18, 1997.  (R.

at 137 - 139).  Plaintiff's complaints included, among other things, that he felt as though he was

"missing a piece" of his brain, felt uncomfortable driving a car, was chronically dizzy and

sometimes felt as though he might black out.  Plaintiff told Dr. Rosenberg that he had so much

difficulty concentrating that he was unable to do his job.   Upon physical examination, Dr.

Rosenberg found that Plaintiff's cranial nerves, motor, sensation, reflexes, coordination and gait

were all normal.  Upon mental status examination, Plaintiff was alert and oriented to place and

date and had an average ability to calculate, no difficulty speaking and no problems spelling or

drawing.   Dr. Rosenberg's impression was that Plaintiff had subjective symptoms of poor

concentration and feeling fuzzy headed but had no neurological abnormalities.

Dr. Stuart Eisenberg, a psychologist, treated Plaintiff beginning in October of 1997

through December of 1998.  (R. at 152 - 153).  Dr. Eisenberg's medical report, prepared on

September 9, 2003, states that Plaintiff complained of an inability to concentrate, anxiety and panic attacks. Plaintiff told Dr. Eisenberg that he had, at various times, been prescribed to Paxil, Prozac, Zoloft and Wellbutrin. Dr. Eisenberg noted that Plaintiff's intelligence was average and Plaintiff denied any suicide attempts. Plaintiff's mental status "showed a man who seemed tense, weak." Although Dr. Eisenberg stated that he had not had contact with Plaintiff in almost five years, his opinion was that Plaintiff "definitely had a major depressive episode which was relatively severe."

Plaintiff was treated by Dr. Jay Roth, a psychologist, beginning in September of 1997 through June of 1998, approximately 4 times a month. (R. at 158 - 164). The medical records indicate that Plaintiff's mental status during his first visit with Dr. Roth was flat and uncertain. Dr. Roth noted that Plaintiff had some drinking issues in the past. The medical records also state that Plaintiff was experiencing panic attacks 3 to 4 times per week that caused him to be unable to work or leave his home and that these episodes would only end when Plaintiff fell asleep. On Plaintiff's last visit with Dr. Roth, he was alert, oriented and his appearance, behavior, speech and intellect were good. Plaintiff's concentration had improved. Dr. Roth noted that Plaintiff did not suffer from any psychosis, hallucination or delusions and marked that his judgment was "?". According to the medical report provided by Dr. Roth, Plaintiff's understanding, memory, sustained concentration and persistence, social interaction and adaptation were limited. Dr. Roth stated that he could not provide a medical opinion regarding Plaintiff's ability to do work related activities because he had not treated Plaintiff for several years.

At the request of the Division of Disability Services, Dr. Jack Baharlias, a psychologist, examined Plaintiff on November 4, 2003. (R. at 154 - 157). The medical records indicate that Plaintiff complained about having difficulty sleeping and acknowledged that he has a history of

4

emotional and psychiatric symptoms in the general category of anxiety. Plaintiff also complained that he was experiencing gastroenterology problems for which he was treated by Dr. Valeri. Dr. Baharlias noted that, based upon a brief cognitive screening, Plaintiff "has no real significant cognitive problems," and that "any cognitive difficulties he has would probably be secondary to anxiety disorders." The medical records indicate that Plaintiff complained that he was "nervous all the time" and sometimes he had racing thoughts. Plaintiff admitted to having some suicidal ideation but had no plans. He denied having paranoid or homicidal thoughts or auditory or visual hallucinations. Dr. Baharlias noted that Plaintiff seemed depressed and obviously anxious, but that his thought processes were logical, he made good eye contact and was well oriented in all three spheres. On the Wechsler Memory Scale subtest, Plaintiff was able to answer all questions correctly. On the Mental Control subtest, he was able to count backwards from twenty. Dr. Baharlias saw no lethargy or agitation and noted that Plaintiff spoke at an adequate volume and rate. Plaintiff also complained about obsessive thoughts that he thought "something is holding me back." Plaintiff acknowledged that he is fearful of being in the company of other people and that he sometimes experiences panic attacks which include the following symptoms: racing heart, shortness of breath and an uncomfortable feeling in his "gut." Plaintiff stated that he had one such panic attack the morning of his appointment with Dr. Baharlias and is usually afraid to have one when the mail comes. Dr. Baharlias noted that he felt that Plaintiff's insight and judgment are below fair but that he would be able to handle his own benefits, from a cognitive point of view, if he is found eligible for funding. Plaintiff told Dr. Baharlias that he smoked two packs of cigarettes daily since the age of fifteen and denies the use of any street drugs. Plaintiff admitted to a DWI conviction in 1990. Plaintiff denies being an alcoholic but did go to AA meetings because it was required as a part of his conviction. Plaintiff

stated that he drinks "a couple of beers a day" and, on some days, could have as much as four beers a day.  Dr. Baharlias ultimately diagnosed Plaintiff with alcohol abuse, somatization disorder, generalized anxiety disorder, panic attacks with agoraphobia and social phobia.  Dr. Baharlias also noted that Plaintiff suffered from gastroenterology illnesses.

Stage Agency physicians J.F. Joynson, Ph.D. and Dr. M. Apaible (the "State Agency Physicians") reviewed Plaintiff's medical record on December 26, 2003, and April 12, 2004, respectively.  (R. at 165 – 183).  The State Agency Physicians found that Plaintiff had the following medically determinable impairments: (1) major depressive episode, (2) generalized anxiety disorder, panic attacks with agoraphobia, social phobia, (3) somatization disorder and (4) alcohol abuse.   Plaintiff was also found to have moderate limitations in maintaining social functioning and in maintaining concentration, persistence or pace.  The State Agency Physicians further determined that Plaintiff was moderately limited in the following: (1) his ability to understand and remember detailed instructions, (2) his ability to carry out detailed instructions, (3) his ability to maintain attention and concentration for extended periods, (4) his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) his ability to work in coordination with or proximity to others without being distracted by them, (6) his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (7) his ability to interact appropriate with the general public, (8) his ability to accept instructions and respond appropriately to criticism from supervisors and (9) his ability to travel in unfamiliar places to use public transportation.  The State Agency Physicians did not find that Plaintiff was markedly limited in any of the above or other categories.   Plaintiff's residual functional capacity, as determined by the State Agency

6

Physicians, was that Plaintiff was able to sustain adequate concentration, persistence and pace, and was capable of performing simple routine work-related activities.

Plaintiff was treated by Dr. John Valeri starting in 1978, with a final appointment in 2003.  (R. at 184).  Dr. Valeri's medical report, dated January 12, 2004, states "I am not a psychiatrist, so I do not feel confident in diagnosing what he has, but will probably someone in your department see him, or send him to someone, but I really feel that this gentleman really cannot work, and should be on complete disability."  Dr. Valeri noted that he treated Plaintiff approximately once a year.  Dr. Valeri reported that Plaintiff had trouble keeping his attention at work.

On October 21, 2004, Plaintiff was examined at the Somerset Family Practice.  (R. at 317 - 321).  Dr. James J. Lohse, M.D., performed a general medical physical exam.  Dr. Lohse identified various problems including hypertension, anxiety, depression, hallucination and a family history of Alzheimer's Disease.  Dr. Lohse determined that Plaintiff's judgment was intact and he was oriented to time, place and person, but had poor recent memory recall, a moderately depressed mood and a history of suicidal ideation and auditory hallucinations.  Plaintiff was referred for psychiatric evaluation and treatment, told to continue using Xanax for acute attacks, advised about switching to a low sodium diet and told to return in one month for a blood pressure check.

At the request of Plaintiff's attorney, Plaintiff was examined by Dr. Gerard A. Figurelli, Ph.D., a licensed psychologist, on April 1, 2005. (R. at 145-151).  Plaintiff told Dr. Figurelli that he was experiencing problems with nervousness and stress.  In connection with these problems, Plaintiff experiences various symptoms including mood change, racing heart, dizziness, inability to maintain thoughts and physical pain.  Plaintiff complained about episodes of panic attacks.

During these panic attacks, Plaintiff experiences the same symptoms as above but they are extreme in their intensity.   Plaintiff admitted that these panic attacks do not last a long time. Plaintiff also complained of fatigue, weakness and an inability to sleep.   He claims that, occasionally, it is hard for him to make it from the bedroom to the bathroom and that, some days, he will only be up for an hour until he has to lay back down again.   Plaintiff told Dr. Figurelli that he has anxiety leaving the house.   Plaintiff makes attempts to leave the house but experiences duress when doing so.   Plaintiff also complained of disturbance with his perception. Occasionally, Plaintiff's hearing would become acute and, as a result, he could not sleep.   At times, Plaintiff's sense of taste was affected.   Dr. Figurelli discussed his education and prior work history.   Plaintiff denied having any significant problems with co-workers or supervisors while employed, but explained that he would have no idea what was happening while he was at the office and experienced memory problems.   Dr. Figurelli noted that, throughout the evaluation, Plaintiff remained alert, compliant, adequately controlled, verbally responsive and maintained adequate eye contact.   Plaintiff communicated in full sentences and his speech remained even paced, clear and sufficiently easy to understand.   Dr. Figurelli reported that Plaintiff did not experience significant difficulty in his attempts to comprehend or remain focused on verbal interaction or basic verbal instruction.   Upon formal mental status exam, Plaintiff showed no significant deficits with immediate recall, concentration on structured tasks or short duration or recall of more remote, personal life history information, but he did show difficulty with delayed recall.   Plaintiff was able to provide accurate responses to questions that required him to perform very basic, single digit addition, subtraction, multiplication and division. Dr. Figurelli reported that Plaintiff was fully oriented to person, place and time and manifested no evidence of active psychotic disturbance.   Plaintiff expressed himself in a coherent manner

8

and manifested no evidence of a formal thought disorder.  Plaintiff showed no significant preoccupation in the content of his thoughts.  His mood at the examination appeared anxious, depressed, withdrawn, anhedonic and constricted.  Dr. Figurelli noted that Plaintiff appears to be of average range intelligence and that his general information appeared appropriate for his age and range of life experience.  Plaintiff displayed understanding of the nature of his emotional difficulties and the significance of his psychologically based symptoms.  Finally, Dr. Figurelli noted that Plaintiff's judgment was adequate.  Plaintiff reported having thoughts of suicide but has never attempted it.  Plaintiff also admitted to having some trouble controlling his anger in the past.  Plaintiff told Dr. Figurelli that he was not involved in any psychotherapy or counseling and does not receive treatment.  Plaintiff was prescribed to Xanax but was not on any other prescription medication because he experiences adverse side effects to the antidepressant medication that he was treated with in the past.   Dr. Figurelli diagnosed Plaintiff with generalized anxiety disorder, panic disorder with agoraphobia, somatization disorder, major depressive disorder (recurrent, chronic type), history of psychotic features, cannabis abuse and personality disorder.

Plaintiff returned to the Somerset Family Practice on December 5, 2005, more than a year after his initial appointment.  (R. at 313 - 316).  Dr. Lohse noted that Plaintiff suffered from panic disorder with agoraphobia and started Plaintiff on daily dose of Wellbutrin to be used in addition to Xanax for acute attacks.   Plaintiff was also started on Toprol to address the hypertension.  Plaintiff was advised to return in two weeks for a blood pressure check.  Plaintiff returned to the Somerset family Practice on March 15, 2006 for his blood pressure follow-up.  (R. at 329 – 332).  Dr. Lohse noted that Plaintiff suffered from hypertension, panic disorder with agoraphobia, depression and borderline hyperlipidemia.  At that time, Plaintiff was oriented to

9

time, place and person and his judgment was intact.  The medical records indicate that Plaintiff was advised to discontinue use of the Toprol prescription because of adverse side effects and was given a prescription for Atenolol instead.  Dr. Lohse also noted that Plaintiff was scheduled to see psychiatrist Richard Hall the following week for evaluation.

On April 6, 2006, Plaintiff was evaluated at Richard Hall Community Mental Health Center by nurse practitioner Kathy Shouffler.  (R. at 323-326).  At that examination, Plaintiff complained of chronic pain, fatigue, insomnia, dizziness of at least ten years duration and gastrointestinal symptoms.  Plaintiff indicated that he wanted an explanation to understand his chronic pain.  Nurse Shouffler found that Plaintiff was significantly disabled.  Plaintiff had not worked in approximately ten years and had given up all of his recreation and had limited functioning outside of his home.  The medical records indicate a diagnosis of somatization disorder, panic disorder and hypertension.  Nurse Shouffler discussed medication options with Plaintiff and gave him the option of an antidepressant or a mood stabilizer.  Plaintiff declined the use of medications because multiple medications have been ineffective in the past and have caused uncomfortable side effects.

### 3.    Expert Testimony

Dr. Martin Fechner testified at Plaintiff's April 25, 2006 hearing.  (R. at 382 - 385).  Dr. Fechner testified based on his review of the medical records and exhibits included in Plaintiff's file at that time.  Dr. Fechner initially testified that there was "nothing really medically much going on."  He determined that Plaintiff was suffering from psychological problems including somatization and depression.  Dr. Fechner testified that Plaintiff would have to stop drinking alcohol for four to six months in order to truly determine what was wrong with him because depression and anxiety are exacerbated by alcohol.

10

At the request of ALJ Ryan, vocational expert Victor Alberigi (the "Vocational Expert") testified at Plaintiff's June 2, 2008 hearing.  (R. at 404 – 412).  The Vocational Expert testified based on his review of the medical records and exhibits included in Plaintiff's file at that time.  The Vocational Expert explained that Plaintiff's prior work as a computer programmer / analyst qualifies as sedentary work with an SVP of 7 and was, therefore, quite skilled.  The Vocational Expert determined that an individual having Plaintiff's age, educational and vocational background, with an ability to perform a full range of medium work, but who could only maintain concentration, persistence and pace for unskilled work would be unable to perform Plaintiff's past relevant work experience.  However, such an individual would be able to perform the requirements of other occupations such as a janitor, a cleaner or housekeeper or an account clerk.  The Vocational Expert also testified that an individual having Plaintiff's age, educational and vocational background, with an ability to perform the full range of medium work, but who had marked limitations in his concentration, persistence and pace would be able to perform the requirements of occupations such a janitor, a cleaner or housekeeper or a small part assembler.

### 4.    Plaintiff's Testimony

Plaintiff testified about his daily activities at the July 5, 2005, April 25, 2006 and June 2, 2008 SSA hearings.  (R. at 337 - 412).  Plaintiff testified that he lives at home with his wife and that his primary daily activity involves watching television.  Sometimes he reads the mail or mows the law.  Plaintiff does not usually leave the house except for an occasional visit with a friend of his who lives down the street.  When he does need to leave the house, his wife drives him.  Plaintiff testified that he has a very difficult time doing menial tasks around the house.  He does a little bit of housework, including some cooking, dish washing, sweeping, mopping and taking out the garbage.  Plaintiff claims that he has mobility problems including that his arms

and legs do not function properly and that he experiences muscle and joint pain. Plaintiff also testified that he has trouble with his thought processes including that he has difficulty problem solving and focusing. He claims that he suffers from sleep deprivation because his mind races with worries and he has gone as long as a week without only a couple hours of sleep. Plaintiff also testified that he has trouble eating and that he has gone more than a week without being able to eat or keep food down. Plaintiff testified that he experiences panic attacks on an almost daily basis. These panic attacks come without warning and for no reason, and can last all day. Plaintiff is prescribed to Xanax but only takes this medication when he senses that he is getting uptight. It takes about half-an-hour for the medication to settle his heart rate down a bit and make him calmer. Plaintiff testified that he has trouble sitting for long periods of time unless he has a cushion. Some days, he has trouble standing long enough to cook himself food or take a shower. Plaintiff has pain in his shoulders, elbows and hands. He also has digestive problems and acid reflux problems, which prohibit him from taking any over the counter pain medications such as Aleve or Advil. He can lift approximately fifty pounds with pain.

## II.    STANDARD OF REVIEW

The district court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). "Substantial evidence" means more than "a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The inquiry is not whether the reviewing court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Thus, substantial

evidence may be slightly less than a preponderance.  *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).  Some types of evidence will not be "substantial."  For example,

> '[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.'

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court must review the evidence in its totality.  *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'"  *Schonewolf v. Callahan*, 972 F.Supp. 277, 284 (D.N.J.1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted)).  The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).  Nevertheless, the district court is not

"empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1183.

### A.      The Five-Step Analysis for Determining Disability

A claimant's eligibility for DIB and SSI is governed by 42 U.S.C. §§ 423 and 1382. Under the Social Security Act (the "Act"), a claimant is eligible for DIB and SSI if he meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b, the disability period requirements of 42 U.S.C. § 416(i) and demonstrates that he is disabled on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   A person is disabled for these purposes only if his physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability and (2) that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  Given that the claimant bears the burden of establishing these first two requirements, his failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there.  *Bowen v. Yuckert*, 482 U.S.

137, 146-47 n. 5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies his initial burdens, he must provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations (the "Listing of Impairments").  20 C.F.R. § 404.1520(d).  Upon such showing, he is presumed to be disabled and is automatically entitled to disability benefits.  *Id*.  If he cannot so demonstrate, the benefit eligibility analysis requires further scrutiny.  The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits him to resume his previous employment.  20 C.F.R. § 404.1520(e).  If the claimant is found to be capable to return to his previous line of work, then he is not "disabled" and not entitled to disability benefits.  *Id*.  Should the claimant be unable to return to his previous work, the analysis proceeds to step five.  At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial, gainful work.  20 C.F.R. § 404.1520(f).  If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits.  *Yuckert*, 482 U.S. at 146-47 n. 5.

## B.      The Record Must Provide Objective Medical Evidence

Under the Act, a claimant is required to provide objective medical evidence in order to prove her disability.  42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); *see also* 42 U.S.C. § 1382c(a)(3)(H)(i) ("In making determinations with respect to disability under this subchapter, the provisions of sections . . . 423(d)(5) . . . shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.").  Accordingly, a plaintiff cannot prove that he is disabled based solely on his subjective complaints of pain and other symptoms.  He must provide medical

findings that show that he has a medically determinable impairment.  *See* 42 U.S.C. § 423(d)(5)(A)*; see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . .").

Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless "medical signs" or laboratory findings show that a medically determinable impairment(s) is present."  20 C.F.R. § 404.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms where the ALJ made finding that complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); *Williams*, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work); *Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves *constitute* disability").

### III.    THE ALJ'S DECISION

After reviewing the available evidence and considering Plaintiff's testimony, ALJ Ryan concluded that Plaintiff was not disabled.  ALJ Ryan determined that Plaintiff met step one of the analysis because he had not engaged in substantial gainful activity since the alleged onset of date of disability, August 1, 1999.  Plaintiff also met the requirements of step two of the analysis because the evidence established the existence of "severe" impairments under the Social Security regulations: depression and anxiety related disorders.  Plaintiff does not dispute ALJ Ryan's findings at steps one and two.

ALJ Ryan concluded that Plaintiff did not meet the requirements of step three of the analysis because the evidence did not disclose any medical condition which met or equaled any of the impairments in the Listing of Impairments.   In so concluding, ALJ Ryan identified the following mental impairment listings as being applicable: 12.04 (affective disorder), 12.06 (anxiety related disorder), 12.07 (somatoform disorder) and 12.09 (substance addition disorders). *See* Appendix 1, Subpart P, Regulations No. 4.   ALJ Ryan found that, with regard to the applicable paragraph B criteria of such listings, Plaintiff has the following functional limitations: (1) mild restrictions of activities of daily living, (2) mild difficulties in maintaining social functioning, (3) moderate deficiencies of concentration, persistence or pace and (4) no episodes of decompensation.   ALJ Ryan also stated that the requirements of the paragraph C criteria for such listings had not been satisfied.   After finding that the paragraph B and C criteria were not satisfied, ALJ Ryan concluded that Plaintiff's mental ailments do not meet or equal a listed impairment.

ALJ Ryan found that Plaintiff has the residual functional capacity to perform medium work involving simple, repetitive work.   In making this finding, ALJ Ryan considered Plaintiff's symptoms, to the extent such symptoms could be reasonably accepted as consistent with the objective medical or other evidence, and the opinion evidence.   Relying on the testimony of the Vocational Expert, ALJ Ryan determined that Plaintiff is unable to perform any past relevant work as a computer programmer analyst.   ALJ Ryan then found that, considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.   In making this determination, ALJ Ryan relied primarily on the Vocational Expert's testimony.   Ultimately, ALJ Ryan found that Plaintiff was not disabled from August 1, 1999 through the date of his decision.

Plaintiff now raises three main arguments challenging ALJ Ryan's decision:

1.   ALJ Ryan improperly evaluated the medical evidence
2.   ALJ Ryan erred at step three of the evaluation because Plaintiff meets a Listed Impairment
3.   ALJ Ryan improperly determined that Plaintiff could perform work

The Commissioner contends that ALJ Ryan's decision is supported by substantial evidence and therefore should be affirmed.

## IV.    LEGAL DISCUSSION

### A.    Whether ALJ Ryan Properly Evaluated the Medical Evidence.

Plaintiff first argues that ALJ Ryan "failed to give proper credence to the complaints of Mr. Prochaska concerning his pain, fatigue, limitation of motion and function, weakness . . . cardiac and gastrointestinal conditions . . . and mental impairments including anxiety, suicidal ideations, agoraphobia, lack of concentration, panic attacks, auditory hallucinations, depression, and insomnia." (Plaintiff's Brief at 18). An ALJ must analyze all of the evidence in the record and provide adequate explanations for disregarding or rejecting evidence. *Cotter v. Harris,* 642 F.2d 700 (3d Cir. 1981). If an ALJ concludes that testimony is not credible, that ALJ must indicate the basis for that conclusion in his decision. *Id.* at 705-706. The ALJ must give serious consideration to a plaintiff's subjective complaints of pain, even when those assertions are not fully confirmed by objective medical evidence. *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir. 1986). If the medical evidence suggests a claimant "has an impairment which is reasonably expected to produce some pain, [the ALJ] must consider all of the evidence relevant to the individual's allegations of pain, even if the alleged pain is more severe or persistent than would be expected." *Sykes v. Apfel,* 228 F.3d 259, 266 n. 9 (3d Cir.2000) (citations omitted). However, the ALJ is not obliged to accept the credibility of such subjective evidence without question. *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir. 1979). An ALJ has discretion "to evaluate the

credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." *Brown v. Schweiker,* 562 F.Supp. 284, 287 (E.D.Pa. 1983) (quoting *Bolton v. Secretary of HHS,* 504 F.Supp. 288 (E.D.N.Y.1980)).

In this case, ALJ Ryan did not find Plaintiff's statements concerning his mental impairments entirely credible, and therefore did not give full weight to Plaintiff's testimony and subjective complaints. ALJ Ryan made specific findings with respect to his decision to partially discredit Plaintiff's statements regarding his impairments and their impact on his ability to work. For example, ALJ Ryan considered Plaintiff's daily activities, which – according to Plaintiff's own testimony – included cleaning, cooking, mopping, sweeping, mowing the lawn and taking out the trash. The ability to engage in these activities, according to ALJ Ryan, is not consistent with a limited range of medium work. ALJ Ryan also took into account Plaintiff's failure to keep various appointments with treating physicians and his failure to seek treatment since 2006. ALJ Ryan found that this treatment history diminished the persuasiveness of Plaintiff's subjective complaints and alleged limitations. In addition to the findings made by ALJ Ryan, the Court notes that other evidence in the medical record points supports ALJ Ryan's conclusion that Plaintiff's complaints and testimony were less than credible. For example, Plaintiff complains that he suffers from an inability to concentration and focus; however, several of the Plaintiff's treating physicians found that the limitations on his concentration and focus were minimal to moderate. Dr. Rosenberg found that Plaintiff's cranial nerves, motor, sensation, reflexes, coordination and gait were all normal and that Plaintiff was alert and oriented to place and date and had an average ability to calculate, speak, spell and draw. Dr. Baharlias noted that, based upon a brief cognitive screening, Plaintiff "has no real significant cognitive problems." The

medical records indicate that Plaintiff complained that he had racing thoughts, but Dr. Baharlias noted that Plaintiff's thought processes were logical, he made good eye contact and was well oriented in all three spheres. On the Wechsler Memory Scale subtest, Plaintiff was able to answer all questions correctly and, on the Mental Control subtest, he was able to count backwards from twenty. The State Agency Physicians determined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions and his ability to maintain attention and concentration for extended periods. Dr. Figurelli noted that, throughout the evaluation, Plaintiff did not experience significant difficulty in his attempts to comprehend or remain focused on verbal interaction or basic verbal instruction. Upon formal mental status exam, Plaintiff showed no significant deficits with immediate recall, concentration on structured tasks or short duration or recall of more remote, personal life history information, but he did show difficulty with delayed recall. Plaintiff was able to provide accurate responses to questions that required him to perform very basic, single digit addition, subtraction, multiplication and division. Although Dr. Roth medical report indicated that Plaintiff's understanding, memory, sustained concentration and persistence, social interaction and adaptation were limited, he also stated that he could not provide a medical opinion regarding Plaintiff's ability to do work related activities. Based on the foregoing, the Court finds that ALJ Ryan's conclusion concerning Plaintiff's credibility was reasonable and is supported by substantial evidence.

Plaintiff complains that ALJ Ryan failed to make specific findings as to Plaintiff's diagnosis of somatoform disorder. (Plaintiff's Brief at 18). The Court disagrees. Although ALJ Ryan did not include somatoform disorder as a severe impairment at step two, he identified Listing 12.07 (Somatoform Disorder) as applicable to Plaintiff's mental impairment. In addition,

contrary to Plaintiff's contention, ALJ Ryan noted that Dr. Baharlias and the Richard Hall Community Mental Health Center both diagnosed Plaintiff with somatoform disorder.

Plaintiff also claims that ALJ Ryan relied too heavily on Dr. Fechner's testimony that "there's nothing really medically much going on" with Plaintiff.  (Plaintiff's Brief at 19).  The Commissioner correctly points out, however, that ALJ Ryan also agreed with Dr. Fechner's ultimate determination that Plaintiff suffered from anxiety, depression and somatoform disorders. Therefore, the Court finds no evidence to support Plaintiff's claim that only certain parts of Dr. Fechner's testimony were considered.

Finally, Plaintiff seems to argue that ALJ Ryan refused to give the treating physicians' opinions in this case their proper weight.  (Plaintiff's Brief at 20 – 22).  Specifically, Plaintiff points to the findings of Dr. Baharlias and Dr. Figurelli and claims that their opinions were not fully taken into consideration.  The Court finds, however, no evidence that ALJ Ryan rejected or discounted the weight given to either of these physicians' opinions.   In fact, ALJ Ryan thoroughly reviewed and agreed with the diagnoses of Plaintiff by both Dr. Baharlias and Dr. Figurelli.

### B.   Whether ALJ Ryan Properly Engaged in the Step Three Analysis

Plaintiff asserts that ALJ Ryan did not properly analyze his impairments under the third step of the evaluation.  In *Burnett v. Commissioner*, the Third Circuit was troubled by the ALJ's summary conclusion that the claimant's impairment did not "meet or is not equivalent to a listed impairment."  220 F.3d 112, 120 (3d Cir. 2000).  The court complained that the ALJ's conclusory statement was "beyond meaningful judicial review."  *Id.* at 119.  With "no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning supporting a determination that

Burnett's 'severe' impairment does not meet or is not equivalent to a listed impairment."  *Id.* at

120.  The Third Circuit, in subsequent opinions, has addressed similarly conclusory statements

regarding step three and focused on *Burnett*'s language requiring "meaningful judicial review."

*Albury v. Comm'r of Soc. Sec.*, 116 Fed.Appx. 328 (3d Cir. 2004); *Caruso v. Comm'r of Soc.*

*Sec.*, 99 Fed.Appx. 376 (3d Cir. 2004); *Maldonado v. Comm'r of Soc. Sec.*, 98 Fed.Appx. 132

(3d Cir. 2004); *Sentyz v. Barnhart*, 83 Fed.Appx. 410 (3d Cir. 2003); *Ballardo v. Barnhart*, 68

Fed.Appx. 337 (3d Cir. 2003).

In *Albury*, the court explained that "our primary concern has always been the ability to

conduct meaningful judicial review. Because the ALJ's decision in this case allows for such

review, any error was harmless because the decision is still supported by substantial evidence,

and the ALJ's decision is explained in sufficient detail to allow meaningful review."  116

Fed.Appx. at 330 (citation omitted).  The court also noted that *Burnett* did "not expressly hold

that the ALJ must discuss the applicable Listing(s) in his/her decision."  *Id.* at n.2.  Similarly, the

court in *Caruso* stated that

> *Burnett* does not require an ALJ to use "magic language" or adhere to a particular
> analytical format. Rather, the purpose of Burnett is to ensure sufficient
> development of the record and explanation of findings to permit meaningful
> judicial review. In this case, the ALJ's decision, read as a whole, convinces us that
> he considered the appropriate factors in reaching the conclusion that Caruso did
> not meet the criteria of any of the listed impairments described in Appendix 1 of
> the Regulations.

99 Fed.Appx. at 379.  In *Maldonado*, the court held that "[w]here, as in this case, we can

determine that substantial evidence supports the ALJ's decision, the 'meaningful judicial review'

goal of *Burnett* is satisfied."  98 Fed.Appx. at 136.  Similarly in *Sentyz*, the court held that after

consideration of the entire record and "despite the inadequate explanation by the ALJ," there was

"substantial evidence to support the ALJ's decision that [the] impairment, though severe, did not

satisfy" the listing criteria.  83 Fed.Appx. at 413.  Lastly, in *Ballardo*, the court also noted that "[b]ecause Ballardo did not meet her burden of production [regarding evidence that her impairment meets or is equivalent to a listed impairment], the ALJ was not required to articulate specific reasons that Ballardo's impairment was not equal in severity to any of the statutorily listed impairments."  68 Fed.Appx. at 338.  Therefore, assuming the claimant satisfies his burden of production so as to obligate the ALJ to articulate his reasons, the meaningful judicial review goal of *Burnett* is satisfied if a review of the entire record is possible even without an articulation of specific listings.

Plaintiff argues that his mental impairment meets or equals Listing 12.07 (Somatoform Disorders).  (Plaintiff's Brief at 27 – 29).  In assessing Listing 12.07 in this case, the Court needs only to consider whether Plaintiff satisfies two of the following Paragraph B criteria:[1]  "(1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration."  20 C.F.R. § 404, Subpart P, Appendix 1, Section 12.07(B).  Plaintiff argues that his mental impairment meets the paragraph B(2) criteria because he has been diagnosed as agoraphobic and the paragraph B(4) criteria based on Dr. Eisenberg's medical records that state he had treated Plaintiff for a number of years beginning in October 1997 but felt his illness began in 1994-1995.  In his written opinion, ALJ Ryan stated the Plaintiff had "mild difficulties in maintaining social functioning" and "no episodes of decompensation."

---

[1]    Plaintiff also claims that he meets two of the paragraph A criteria.  Specifically, he claims that he experiences (1) persistent non organic disturbance of movement and its control and (2) unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury.  The Commissioner does not concede that Plaintiff meets these paragraph A criteria, but correctly points out that Listing 12.07 (Somatoform Disorders) requires that the criteria in both paragraphs A <u>and</u> B are satisfied.  20 C.F.R. § 404, Subpart P, Appendix 1, Section 12.07.  Even if Plaintiff's medical condition satisfies the requirements in paragraph A, Plaintiff does not meet or equal Listing 12.07 unless the requirements in paragraph B are met.

Although ALJ Ryan failed to go into a detailed analysis of why Plaintiff did not satisfy the paragraph B criteria, his decision, read as a whole, illustrates that he considered the appropriate factors in reaching the conclusion that Plaintiff did not meet the paragraph B requirements for any of the applicable listings.  The Court first notes that ALJ Ryan's opinion thoroughly discusses and summaries the medical evidence pertaining to somatoform disorders, affective disorders and anxiety disorders.  With respect to Plaintiff's ability to maintain social functioning, ALJ Ryan noted that Plaintiff occasionally has a couple of beers with his friends and that Plaintiff denied having problems with co-workers and supervisors while he was employed. ALJ Ryan also considered evidence that Plaintiff remained alert, compliant, controlled and verbally responsive during psychiatric evaluation and that Plaintiff expressed himself in a coherent manner and manifested no gross evidence of a formal thought disorder.  In fact, Plaintiff testified that he gets along with people and the only time he is happy is when he sits on his back porch and listens to or sees a friend.  With respect to the paragraph B(4) criteria, the Code of Federal Regulations explains that the term "episodes of decompensation" means "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  20 C.F.R. § 404, Subpart P, Appendix 1, Section 12.00C(4).   In addition, "repeated episodes of decompensation, each of extended duration" means three episodes of decompensation within one year, or an average of once every four months, each lasting for at least two weeks.   20 C.F.R. § 404, Subpart P, Appendix 1, Section 12.00C(4).   Though there is some evidence that Plaintiff experienced periods of improvement and periods of relapse with respect to his mental impairment, there is no evidence to suggest that such decompensation falls within the meaning of

the paragraph B criteria.   Therefore, the Court finds that ALJ Ryan's determination that the paragraph B criteria are not satisfied in this case is supported by substantial evidence.

Plaintiff also contends that his mental impairment meets or equals Listing 12.04 (Affective Disorders) and Listing 12.06 (Anxiety Disorders).   (Plaintiff's Brief at 29 – 30). Listing 12.04 is met when the criteria in paragraphs A and B are satisfied, <u>or</u> when the criteria in paragraph C are satisfied.  20 C.F.R. § 404, Subpart P, Appendix 1, Section 12.04.  Listing 12.06 (Anxiety Disorders) is met when the requirements in paragraphs A and B are satisfied, <u>or</u> when the requirements in paragraphs A and C are satisfied.  *Id.* at Section 12.06.  In assessing Listing 12.04 and Listing 12.06 in this case, the Court considers whether ALJ Ryan's analysis of the paragraph C criteria is supported by substantial evidence.[2]

Though ALJ Ryan's decision does not offer a detailed explanation for his conclusion that the requirements of paragraph C criteria of Listing 12.04 and Listing 12.06 have not been met, the Court finds that his determination is supported by substantial evidence.  The paragraph C criteria of Listing 12.04 includes a requirement that the claimant show a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support."   ALJ Ryan determined that Plaintiff's mental impairment had "no greater than an mild impact on … the ability to perform basic work functions."   As discussed above, there is substantial evidence to support the conclusion that Plaintiff only experiences mild difficulties in his ability to do basic work

---

[2]        The paragraph B criteria for Listing 12.04 and Listing 12.06 are the same as those for Listing 12.07.  *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Sections 12.04 and 12.07.   As discussed above, ALJ Ryan's analysis of the paragraph B criteria is supported by substantial evidence; therefore, Plaintiff cannot meet or equal Listing 12.04 or Listing 12.06 unless the requirements in paragraph C are met.

functions; therefore, the Court finds that ALJ Ryan's conclusion that Plaintiff does not satisfy the criteria of Listing 12.04 is supported by substantial evidence.

The paragraph C criteria of Listing 12.06 requires a "complete inability to function independently outside the area of one's home." 20 C.F.R. § 404, Subpart P, Appendix 1, Section 12.06(C). With respect to this criteria, ALJ Ryan simply stated that "[t]he requirements of the C criteria have not been satisfied." However, ALJ Ryan then reviewed and analyzed the hearing testimony and medical evidence for approximately the next seven pages. Even assuming ALJ Ryan did not properly articulate his findings in those seven pages that followed, his conclusion is supported by substantial evidence. The medical records show that, although Plaintiff suffers from agoraphobia, he is able to function outside of the area of his home. First, the Court notes that Plaintiff has been able to attend and testify in the three hearings associated with this case. The medical records consistently show that Plaintiff was able to communicate effectively with the medical professionals who have examined him over the course of the diagnosis and treatment of his mental impairment. Plaintiff testified that the only time he is happy is when he occasionally goes down the street to visit with a friend. Although Plaintiff complains that he struggles to function outside of his home, there is substantial evidence to support the conclusion that he is not "completely unable" to do so, as required by the paragraph C criteria of Listing 12.06.

### C.      Whether ALJ Ryan Properly Found that Plaintiff Could Perform Work

ALJ Ryan concluded that Plaintiff had a residual functional capacity to perform medium work involving simple repetitive work. Plaintiff argues that ALJ Ryan's determination is conclusory and not supported by the medical evidence. (Plaintiff's Brief at 31). The Court disagrees. Dr. Rosenberg determined that Plaintiff's subjective symptoms of poor concentration

and feeling fuzzy headed were not the result of neurological abnormalities.  Dr. Eisenberg noted that Plaintiff's intelligence was average.  Even though Dr. Roth wrote that he could not give a medical opinion regarding Plaintiff's ability to do work related activities because he had not treated Plaintiff for several years, he noted that, on his last visit, Plaintiff was alert, oriented and his appearance, behavior, speech and intellect were good.   Plaintiff's concentration had improved.   Dr. Baharlias was of the opinion that, based upon a brief cognitive screening, Plaintiff "has no real significant cognitive problems."  He also noted that, although Plaintiff seemed depressed and obviously anxious, his thought processes were logical, he made good eye contact and was well oriented in all three spheres.  The State Agency Physicians concluded that Plaintiff's residual functional capacity was that he was able to sustain adequate concentration, persistence and pace, and was capable of performing simple routine work-related activities.  Dr. Figurelli's medical records noted that Plaintiff remained alert, compliant, adequately controlled, verbally responsive and maintained adequate eye contact throughout his examination.  Plaintiff communicated to him in full sentences and his speech remained even paced, clear and sufficiently easy to understand.  Dr. Figurelli also reported that Plaintiff did not experience significant difficulty in his attempts to comprehend or remain focused on verbal interaction or basic verbal instruction.  Plaintiff did not show any significant deficits with immediate recall, concentration on structured tasks or short duration or recall of more remote, personal life history information, but he did show difficulty with delayed recall.  Plaintiff was also able to provide accurate responses to questions that required him to perform very basic, single digit addition, subtraction, multiplication and division.  Dr. Figurelli wrote that Plaintiff expressed himself in a coherent manner and showed no significant preoccupation in the content of his thoughts.  His mood at the examination appeared anxious, depressed, withdrawn, anhedonic and constricted.

Dr. Figurelli noted that Plaintiff appeared to be of average range intelligence had adequate judgment.   Based on the evidence summarized above, the Court finds that ALJ Ryan's conclusion that Plaintiff has the residual functional capacity to perform medium work involving simple, repetitive tasks is supported by substantial evidence.

Finally, Plaintiff alleges that the hypothetical question composed by ALJ Ryan and given to the Vocational Expert was inadequate because it failed to convey all of his mental limitations. (Plaintiff's Brief at 31 – 33).   Specifically, Plaintiff alleges that ALJ Ryan failed to include information about Plaintiff's depressed and anxious mood, his ability to only drive short distances, his history of an inability to control his anger and his limited ability to understand, remember and carry out detailed instruction.   The hypothetical that ALJ Ryan posed to the Vocational Expert involved an individual having Plaintiff's age, educational and vocational background with the ability to perform medium work who could only maintain concentration for unskilled work.   The Vocational Expert replied that such an individual could not perform Plaintiff's past relevant work but would be able to perform the job requirements of a janitor, a cleaner or housekeeper or an account clerk.   The Vocational Expert also testified that an individual with the same qualifications as above but with marked difficulties with concentration would be able to perform the job requirements of a small parts assembler but not an account clerk.  Based on this testimony and his review of the records, ALJ Ryan determined that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

Under the Social Security regulations, "a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the

demands of the claimant's previous work."  20 C.F.R. § 404.1560(b)(2).  While "the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations," *Rutherford v. Barnhart,* 399 F.3d 546, 554 (3d Cir. 2005), "[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant."  *Id.*  Thus, the ALJ is bound to convey only those impairments "that are medically established."  *Id.*  Testimony of a vocational expert constitutes substantial evidence for purposes of judicial review only where the hypothetical question posed by the ALJ fairly encompasses all of an individual's <u>significant</u> limitations that are supported by the record. *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004).

The Court finds that the hypothetical questions conveyed to the Vocational Expert by ALJ Ryan contained sufficient specificity with respect to Plaintiff's credibly established mental limitations.   As discussed above, ALJ Ryan determined that Plaintiff suffered from <u>mild</u> restrictions of activities of daily living, <u>mild</u> difficulties in maintaining social functioning, <u>moderate</u> deficiencies of concentration, persistence or pace and <u>no episodes</u> of decompensation. Based on this conclusion, ALJ Ryan's hypothetical question contained an accurate description of Plaintiff's credibly established limitations.

## IV.     Conclusion

For the foregoing reasons, the Court concludes that substantial evidence supports ALJ Ryan's factual findings and thus affirms the Commissioner's final decision denying benefits for Plaintiff.  An appropriate order follows.


Dated: March 21, 2011


s/ Joel A. Pisano<br>
JOEL A. PISANO U.S.D.J.